# IN THE COURT OF APPEALS OF IOWA

No. 23-2001
Filed July 24, 2024

IN THE MATTER OF R.K., ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,

**R.K.,**
  Respondent-Appellant.

---

IN THE MATTER OF R.K., ALLEGED TO BE A PERSON WITH A SUBSTANCE RELATED DISORDER,

**R.K.,**
  Respondent-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Jessica Noll, Judge.

R.K. appeals involuntary-commitment orders under Iowa Code chapters 125 and 229. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Debra S. De Jong, Orange City, for appellant.

Brenna Bird, Attorney General, and Sarah Anne Jennings, Assistant Attorney General, for appellee State.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

R.K. appeals two involuntary-commitment orders under Iowa Code chapters 125 and 229 (2023). She argues the district court's findings that she suffers from a substance use disorder, as provided in Iowa Code section 125.2(16), and a serious mental impairment, as defined in section 229.1(22), are not supported by sufficient evidence. She also contends that she received ineffective assistance of counsel. Upon our review, we affirm R.K.'s commitment under section 229.1(22). But we reverse R.K.'s commitment under section 125.2(16) and remand for dismissal of that application.

## I.    *Background Facts and Proceedings.*

In November 2023, R.K.'s mother and sister filed applications alleging R.K. to be a person with a substance use disorder and serious mental impairment. The applicants alleged R.K. "has drug addictions including meth, pain killers, and other illegal substances" and suffers from "hallucinations, erratic, violent, emotionally unstable behavior."

The district court ordered that R.K. be immediately detained and appointed a physician to conduct an examination. Dr. Brandon Vanhessche examined R.K. on November 9. Dr. Vanhessche diagnosed R.K. with "ADHD, generalized anxiety disorder, major depressive disorder" and a history of "substance abuse." He further found that based on her history of noncompliance with treatment and "mood liability resulting in hospitalizations and rehab needs," R.K. could not care for herself and was likely to physically injure herself or others.

While nurse practitioner Cassidy Carr was previously R.K.'s long-standing mental-health provider, R.K. sought a second opinion the day of the hearing from

a different psychiatric-mental health nurse practitioner, Danika Hansen. Hansen saw R.K. for medication management earlier that year on September 11 and September 22. After meeting with R.K., Hansen provided a letter to the court in which she disagreed with Dr. Vanhessche's findings. Instead, Hansen found that, while R.K. was being "treated for Generalized Anxiety Disorder; Post Traumatic Stress Disorder, Chronic; Major Depressive Disorder, Recurrent, and ADHD," R.K. "has not shown any signs that she would not be capable of making responsible decisions" with her health or that she is a risk to herself or others. She added that "[t]o the best of [her] knowledge, [R.K.] has been compliant with medications" and attending treatment. But Hansen also noted that "during [their] short time together," R.K.'s "mental health has improved and declined" and R.K. did miss some appointments "due to forgetting."

A combined hearing on both applications was held on November 20. Both applicants testified during the hearing, describing their motivation behind the petitions as being to "get her the help that she needs." But R.K. interrupted the hearing several times, alleging the applicants "manipulate and lie" and implying that the proceedings were somehow vengefully orchestrated to force a hearing "[t]he day before my son's birthday."

In her testimony, R.K.'s sister, W.K., stated that R.K. has struggled for several years with mental-health and substance-use concerns. W.K. testified to R.K.'s uncontrollable mood swings and the physical violence she committed when she didn't get her way, which had led to police involvement. On one occasion, R.K. was "talking to herself, her head bobbing up and down" and "hallucinating" in W.K.'s kitchen. W.K. testified that R.K. believes there are people hiding in the

rafters or following her and that "drones are in the sky watching her when they're just the stars." R.K. also admitted to her sister that she was using methamphetamine and left a makeup pouch "full of opioids" at W.K.'s house.

R.K.'s mother, J.C., testified to similar behaviors. She stated that R.K. "switches on a dime" and displays aggression. On November 5, J.C. reported that R.K. showed up at her house despite an existing no contact order. R.K. "forced her way" into the home and called J.C. profane names in front of R.K.'s children. J.C. asked her to leave, but R.K. instead gathered clothing that J.C. purchased for her and the children to have at her home. When R.K. left, she "shoved" J.C. into the doorway and "pushed [her] violently." J.C. then applied for both the committals and a second no contact order.

R.K. herself also testified, claiming that her mother and sister were retaliating against her because she denied them access to R.K.'s children. R.K. stated the allegations were fabricated, that she was not using methamphetamine or other substances, and the applicants' claim that she was hallucinating is "not true." She also explained that the incident in W.K.'s kitchen was due to domestic violence, not drug use. R.K. testified she has been voluntarily seeking treatment and is willing to continue. She denied having any "no call no show" appointments but also admitted to missing at times due to "short-term memory loss" from domestic abuse. While R.K. also claimed that she was taking her medications as prescribed, she refused to provide specifics because "that's HIPAA private law."[1] But she also conceded that as of the physician evaluation, she was not up-to-date

---

[1] We note that these protections do not apply to civil-commitment proceedings. *See* Iowa Code § 228.6(3).

on prescribed medications, stating she was released from the hospital because she had neither methamphetamine nor "a certain medication in my system that I'm prescribed."

The court found that R.K. suffers from both a substance use disorder and a serious mental impairment, granting both applications for committal. R.K. appeals, challenging the sufficiency of the evidence and claiming ineffective assistance of counsel.

## II.  Sufficiency of the Evidence.

R.K. first contends insufficient evidence supports both findings. We review sufficiency-of-the-evidence challenges for correction of errors at law. *See In re V.H.*, 996 N.W.2d 530, 536 (Iowa 2023). The court's findings of fact "are binding on us if supported by substantial evidence." *Id.* (citation omitted). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.* (citation omitted).

*A. Substance Use Disorder.*

R.K. argues there was insufficient evidence that she has a substance use disorder as defined in Iowa Code section 125.2(16),[2] and that no evidence supported the finding that she "presents a danger to self or others and lacks judgmental capacity." *See* Iowa Code § 125.75(2)(a). A "presumption in favor of the respondent exists," which requires termination of the proceedings if clear and

---

[2] A "substance use disorder" is defined as a "diagnosable substance use disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in a functional impairment." Iowa Code § 125.2(16).

convincing evidence cannot be established. *Id.* § 125.82(4). To support her argument, R.K. cites the physician's report, which does not include a sufficient diagnosis as required by statute. *See id.* § 125.2(16). Instead, it cites R.K.'s "[history] of substance abuse." While it may be true that R.K. has had a history of substance-use issues, Dr. Vanhessche did not diagnose her with any current disorder covered in the diagnostic and statistical manual. *See id.* § 125.2(16). In fact, he did not list any diagnosis at all. We therefore find the court erred in finding that R.K. suffers from a diagnosable substance use disorder and committing her under section 125.75(1). Accordingly, we reverse and remand for dismissal.

*B. Serious Mental Impairment.*

R.K. similarly contends that insufficient evidence supports the finding that she suffers from a serious mental impairment as defined in section 229.1(22).[3] R.K. does not dispute that she suffers from a diagnosed mental illness. Instead, she argues there is not enough evidence to show that she lacks sufficient judgment or is a danger to herself or others. We consider each argument in turn.

*1. Lacking Sufficient Judgment.*

A finding of "serious mental impairment" requires a respondent to "lack[] sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." *Id.* § 229.1(22). The district court found that R.K. cannot make responsible decisions about her own treatment, and we agree.

---

[3] A "serious mental impairment" is defined as "the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." Iowa Code § 229.1(22).

R.K.'s arguments focus on the physician report, claiming that it was insufficiently vague. In the report, Dr. Vanhessche opined that R.K. is not "capable of making responsible decisions with respect to hospitalizations or treatment." To support this conclusion, Dr. Vanhessche noted R.K.'s past history with substance use, hospitalization, family communication and safety concerns, and not taking prescribed medications. In fact, in its ruling, the court focused largely on R.K.'s lack of compliance with medications. *See In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010) (weighing a "lengthy history of noncompliance" with medication management against the respondent's testimony promising to comply). R.K. attempts to make a credibility challenge, claiming that Hansen's opinion "should have been given more weight than that of Dr. Vanhessche." But it is the district court's job to address the evidence before it and make credibility determinations, not ours on appeal. *See In re E.H.*, No. 02-1786, 2003 WL 22190913, at *8 (Iowa Ct. App. Sept. 24, 2003). R.K. also claims she contradicted such findings in her testimony, but again, this is a credibility determination, and her testimony was inconsistent. R.K. admitted she did not have "a certain medication in my system that I'm prescribed" while at the hospital yet also testified that she fully complied with medications. She also refused to answer basic questions about her medication management when testifying. While it is not R.K.'s burden to disprove any allegations, *see* Iowa Code § 229.12(3)(a), her testimony does little to dispel the applicants' statements as she claims.

The record evidence also establishes that R.K. struggles to attend treatment, which has led to both hospitalizations and exacerbated symptoms. R.K. herself testified that while treatment was a "positive support system," she did not

attend appointments "for two months" during the commitment proceedings. R.K.'s provider also noted that she "has missed some appointments due to forgetting," which R.K. confirmed. In their testimonies, W.K. and J.C. both outlined several intervention attempts and described in detail R.K.'s mental-health symptoms. They also touched on the resulting ramifications, such as police involvement and interpersonal issues. Based on R.K.'s inability to seek treatment for herself when needed, we find substantial evidence supports the court's finding that she lacks judgmental capacity.

  2.  *Recent Overt Act to Establish Dangerousness.*

The third requirement to establish a serious mental impairment is "known as the 'endangerment element.'" *V.H.*, 996 N.W.2d at 543 (citation omitted). It requires R.K. to be a danger to herself or others to justify commitment, as "evidenced by a recent overt act, attempt, or threat." *Id.* (cleaned up). While we consider "prior manifestations" in our analysis of dangerousness, our focus is "future rather than past danger." *Id.* (citation omitted).

To meet the definition of "serious mental impairment," the respondent must meet one of four criteria of dangerousness. Iowa Code § 229.1(22)(a)–(d). The district court found that R.K. met two: (1) a likelihood to "physically injure the person's self or others if allowed to remain at liberty without treatment" and (2) "a history of lack of compliance with treatment," with the lack of compliance either being "a significant factor in the need for emergency hospitalization" or "result[ing] in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others." *Id.* § 229.1(22)(a), (d). R.K. challenges both grounds.

The court found that R.K. was likely to physically injure herself or others under section 229.1(22)(a). We agree. "The 'overt act' must indicate 'past aggressive behavior or threats' that manifest 'the probable commission of a dangerous act' by the respondent 'that is likely to result in physical injury.'" *V.H.*, 996 N.W.2d at 544 (citation omitted). We find there is clear and convincing evidence that R.K. has a history of violent, physically-abusive behaviors towards others, particularly family members, and this is likely to reoccur in the future. Dr. Vanhessche noted in his examination the "[n]egative interactions with family" that led to "safety concerns," and the applicants' testimonies corroborated this. W.K. described R.K. "acting out by screaming, throwing things, slamming doors" and experiencing bouts of anger going "from zero to a hundred." W.K. witnessed R.K. "do a lot of violent acts towards people" and was the victim of one attack herself. She stated that R.K. threatens her and on one occasion, "punched me in the eye to where I couldn't see." W.K. recounted R.K.'s interactions with her own children, alleging physical abuse and "scream[ing] at the top of her lungs to her children." J.C. also testified similarly, stating R.K. made physical threats and engaged in "very aggressive behavior" "[ninety-seven] percent of the time." R.K.'s actions have led to multiple no contact orders and police encounters, with R.K. being "in and out of jail." In particular, J.C. testified about the incident on November 5, where R.K. "forced her way" into J.C.'s residence and violently "shoved" J.C. into a doorway.

Even R.K.'s own behavior at the hearing reflects her lack of control. She interrupted several times, complaining about the date of hearing being "[t]he day before my son's birthday" and interfering with the proceedings. When W.K. was

trying to testify, R.K. alleged the applicants "manipulate and lie." She later interjected again during J.C.'s testimony, stating that J.C. was "luck[y]" because J.C. "could be in jail right now." Even properly placing the burden on the applicants and granting "a presumption in favor of" R.K., *see* Iowa Code § 229.12(3)(a), there is substantial evidence here. R.K.'s history of aggression and her consistent lack of impulse control does not suggest that the court erred in finding she is likely to physically injure herself or others; in fact, it proves the opposite.

While the court further found that R.K.'s historical lack of compliance with treatment established the dangerousness requirement, we need find only one to meet the definition of a "serious mental impairment." *See* Iowa Code § 229.1(22) (requiring the respondent to "meet[] *any* of the following criteria" (emphasis added)). Accordingly, we affirm the court's finding that R.K. suffers from a "serious mental impairment" without considering the merits of this other ground.

### III. Ineffective Assistance of Counsel.

R.K. then argues that she received ineffective assistance of counsel during her commitment proceedings.[4] As justification for her claim, she specifically cites her counsel's failure to call Dr. Vanhessche, Hansen, and Carr to testify and argues this was prejudicial because their testimonies would have rebutted the applicants' evidence.[5] We review ineffective-assistance-of-counsel claims de

---

[4] Without deciding, we will assume for the purposes of this appeal that R.K. had a right to effective assistance of counsel and proceed to the merits. But the Iowa Supreme Court "has not definitely held that persons facing involuntary civil commitment under chapter 229 have" such a right. *In re J.H.*, No. 12-1133, 2013 WL 1760183, at *2 (Iowa Ct. App. Apr. 24, 2013).

[5] R.K. also challenges her counsel's alleged failure to object to the physician examination. But because she neglects to expand further on this argument, we

novo. *B.T.G.*, 784 N.W.2d at 798. To prevail, R.K. "must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the claimant a fair trial." *Id.* R.K.'s inability to prove either element results in failure of the claim itself. *See id.*

We first consider Dr. Vanhessche. R.K. claims that because the physician examination was lacking detail, she should have been able to cross-examine Dr. Vanhessche and allow him to expand on his diagnoses and conclusions.[6] But this would not help R.K.'s case; if anything, more explanation may have remedied some of the missing information, especially with the substance-use concerns. His testimony could have also offered additional details and observations regarding R.K.'s behavior while at the hospital. *See id.* at 799 (considering whether the testimony would have led to more detailed "specifics" in essential-duty analysis). We therefore find R.K.'s counsel was not ineffective because Dr. Vanhessche did not testify at the hearing.

R.K. then argues that Hansen and Carr could have testified to her compliance with treatment and thus countered Dr. Vanhessche's findings. But R.K. provided no evidence that these providers' testimonies would have changed the outcome. *See id.* (finding no ineffective assistance when "there is not a reasonable probability that the outcome would have been different"). At the time of the hearing, Hansen had only seen R.K. two or three times and acknowledged

---

find it waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (waiving issues that are not supported by authorities and argument).

[6] R.K. also argues that Dr. Vanhessche's testimony was required under Iowa Code section 125.82(3). Because we reverse R.K.'s committal under chapter 125, we do not consider the merits of this argument.

their "short time together." It is likely Hansen's testimony would have been vague, similar to the exhibits. As for Carr, while R.K. noted they had worked together "consistently for over two years," she fails to explain how her testimony would have led to a different result. Dr. Vanhessche's and Hansen's exhibits were based on R.K.'s current behavior while Carr had not seen R.K. since months earlier. *See id.* (noting "much more recent" evidence is more probative to the dangerousness analysis). We similarly find no breach by counsel for not subpoenaing R.K.'s providers.

Because R.K. has neither shown breach of duty nor prejudice, her ineffective-assistance claims fail.

## IV. *Disposition.*

Because substantial evidence supports the court's finding that R.K. suffers from a serious mental impairment, we affirm her commitment under 229.1(22). But there is insufficient evidence showing that R.K. has a substance use disorder. We reverse the order committing R.K. under section 125.75(1) and remand for dismissal of that application.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**